**WAGENBERG**

v.

**CHARLESTON WOOD PRODUCTS,**
Inc. et al.

Civ. No. 3443.

United States District Court,
E. D. South Carolina,
Charleston Division.

Aug. 13, 1954.

Shimel & Ackerman, Charleston, S. C., Royall & Wright, Florence, S. C., for plaintiff.

Coming B. Gibbs, Charleston, S. C., for defendant A. Rochlin.

WYCHE, Chief Judge (sitting by designation).

The above entitled action, a derivative stockholder's suit, was brought for damages and for an accounting of the acts and doings of the individual defendants resulting in profit to them and/or resulting in the loss or damages to the defendant corporation and to the plaintiff as a stockholder thereof.

The defendant Charleston Wood Products, Inc., is a corporation organized under the laws of the State of South Carolina, and the defendant A. Rochlin is its president and director. The acts complained of took place in the Eastern District of South Carolina.

The case is now before me upon motion of the defendant A. Rochlin, a nonresident director of the defendant Charleston Wood Products, Inc., for an order quashing the service of the summons and complaint upon him, upon the ground that Section 10–432.1 of the South Carolina Code 1952, is unconstitutional and in violation of the due process clause of the 14th Amendment.

Section 12–363, South Carolina Code 1952, provides that the secretary of a domestic corporation, having a director who is or becomes a nonresident of South Carolina, shall file with the Secretary of State the name and address of such director within thirty days from the date of the election or appointment of such director.

Section 12–361, South Carolina Code 1952, provides that such nonresident director shall, by the acceptance of election or appointment as such director of any domestic corporation, or by his having continued as such director for a period of thirty days after May 19, 1947, be held, by such election, appointment or continuance to have appointed the Secretary of State as his attorney in fact for the service of process upon him in any action for the purposes stated in Section 10–432.1 of the Code of Laws of South Carolina 1952.

Section 10–432.1, Code of Laws of South Carolina 1952, now under attack, provides that any nonresident director of a domestic corporation may be served with process with respect to any action relating to actions of such domestic corporation, arising while such nonresident director held office as such, by delivering to the Secretary of State two copies of the summons and complaint, and that the Secretary of State shall forthwith forward one copy of such summons and complaint to the nonresident director at the last address filed with the Secretary of State as provided in the Code.

The statute further provides that the Court in which any action is pending shall order such continuance as may be necessary to afford any nonresident director so served reasonable opportunity to defend the action.

The defendant A. Rochlin relies, in support of his motion, upon the case of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565. That case was decided by the Supreme Court in 1878; it was brought to recover the possession of a tract of land of the value of $15,000, situated in the State of Oregon; the defendant claimed to have acquired the premises under a Sheriff's deed made upon a sale of the property on execution issued upon a judgment recovered against the plaintiff for less than $300. When the judgment was rendered the defendant was a nonresident of the State. The judgment was entered upon his default upon a constructive service of the summons by publication. The Court below held that the judgment was invalid because of defects in the affidavit by which the publication was proved. The Supreme Court affirmed the judgment, not for that reason, given by the Court below, but because no service was made upon the defendant in the State where the judgment was recovered, stating: "Neither do we mean to assert that a State may not require a non-resident entering into a partnership or association within its limits, or making contracts enforceable there, to appoint an agent or representative in the State to receive service of process and notice in legal proceedings instituted with respect to such partnership, association, or contracts, or to designate a place where such service may be made and notice given, and provide, upon their failure, to make such appointment, or to designate such place that service may be made upon a public officer designated for that purpose, or in some other prescribed way, and that judgments rendered upon such service may not be binding upon the non-residents both within and without the State. As was said by the Court of Exchequer in Vallee v. Dumergue, 4 Exch. 290, 'It is not contrary to natural justice that a man who has agreed to receive a particular mode of notification of legal proceedings should be bound by a judgment in which that particular mode of notification has been followed, even though he may not have actual notice of them.' See also Lafayette Insurance Co. v. French, 18 How. 404, 15 L.Ed. 451, and Gillespie v. Commercial Mutual Marine Insurance Co., 12 Gray 201, 78 Mass. 201. Nor do we doubt that a State, on creating corporations or other institutions for pecuniary or charitable purposes, may provide a mode in which their conduct may be investigated,

their obligations enforced, or their charters revoked, which shall require other than personal service upon their officers or members. Parties becoming members of such corporations or institutions would hold their interest subject to the conditions prescribed by law. Copin v. Adamson, Law.Rep. 9 Ex. 345. In the present case, there is no feature of this kind, and, consequently, no consideration of what would be the effect of such legislation in enforcing the contract of a nonresident can arise. The question here respects only the validity of a money judgment rendered in one State, in an action upon a simple contract against the resident of another, without service of process upon him, or his appearance therein."

In 1927, the Supreme Court in the case of Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 633, 71 L.Ed. 1091, recognized the validity of a Massachusetts statute, providing that the acceptance by a nonresident of the privilege to operate a motor vehicle on the public highways in Massachusetts, shall be deemed equivalent to an appointment by such nonresident of the registrar to be his lawful attorney upon whom process may be served, in an action against him growing out of any accident or collision in which the nonresident was involved by operating such motor vehicle in Massachusetts. The Supreme Court pointed out that motor vehicles are dangerous machines and that in the public interest the State may make and enforce reasonable regulations and called attention to the fact that the statute makes no hostile discrimination against nonresidents but puts them on the same footing as residents and that literal and precise equality is not attainable and is not required, and states further: "The difference between the formal and implied appointment is not substantial, so far as concerns the application of the due process clause of the Fourteenth Amendment."

In 1935, the Supreme Court decided the case of Doherty & Co. v. Goodman, 294 U.S. 623, 55 S.Ct. 553, 79 L.Ed. 1097;

in that case the Iowa statute provided that when a corporation or individual had, for the transaction of any business, an office or agency in any county other than that in which the principal resided, service may be made on any agent or clerk employed in such office or agency in all actions growing out of or connected with the business of that office or agency; the defendant was a nonresident; he appeared specially and claimed that King, the person upon whom process was served, had no authority to accept service of process and that to hold otherwise would deprive him of the rights guaranteed by the Federal Constitution. The Supreme Court upheld the validity of the statute and affirmed the judgment based upon the service on the agent of the nonresident defendant, stating that Iowa treats the business of dealing in corporate securities as exceptional and subjects it to special regulation.

In 1945, the Supreme Court decided the case of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95. The question in that case was whether a Delaware Corporation had by its activities in the State of Washington rendered itself amenable to the proceedings in the courts of that State to recover unpaid contributions to the State Unemployment Compensation Fund. The Supreme Court, answering the question in the affirmative, said "Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. Pennoyer v. Neff, 95 U.S. 714, 733, 24 L.Ed. 565. But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the mainte-

nance of the suit does not offend 'traditional notions of fair play and substantial justice.' (Citing cases.)"

In April, 1950, the Supreme Court decided the case of Mullane v. Central Hanover Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865; in that case the Court passed upon the question as to whether the New York statute governing the giving of notice to beneficiaries on judicial settlement of accounts by trustees of common trust funds, provided for sufficient notice to beneficiaries residing out of the state, so as to bind the nonresident beneficiaries, and held that New York could provide by proper legislation for proceedings to be brought in that state so as to bind nonresident beneficiaries, but that that statute did not provide for sufficient notice because there was no provision for the mailing of such notice to the nonresident beneficiaries.

In June, 1950, the Supreme Court decided the case of Travelers Health Ass'n v. Com. of Virginia, 339 U.S. 643, 70 S.Ct. 927, 929, 94 L.Ed. 1154; in that case proceedings were instituted by the State Corporation Commission of Virginia against Travelers Health Association and against R. E. Pratt as its treasurer and in his personal capacity, having as its object the enjoining of the defendants from soliciting and selling insurance certificates; the statute provided for service of process on the Secretary of the Commonwealth. The Supreme Court, in answer to the contention that Virginia had no power in cease and desist proceedings, said: "We cannot agree with this general due process objection, for we think the state has power to issue a 'cease and desist order' enforcing at least that regulatory provision requiring the Association to accept service of process by Virginia claimants on the Secretary of the Commonwealth."

■ It appears from the foregoing decisions by the Supreme Court that where a state has an interest in regulating operations and transactions by nonresidents, it has the power to enact appropriate legislation for the bringing of a nonresident into its forum in actions affecting his transactions in that state.

In the case of American Casualty Co. v. Harrison, D.C.Ark., 96 F.Supp. 537, the Court upheld the statute providing that the doing of any business or performing any character of work or service in the State of Arkansas, should constitute the appointment of the Secretary of State upon whom process may be served in any action accruing from the doing of such business or performing of such work.

In the case of Parmalee v. Iowa State Traveling Men's Ass'n, 5 Cir., 206 F.2d 518, the Court upheld the Florida statute authorizing service of process upon a nonresident insurer by delivering copies thereof to the Insurance Commissioner.

In the case of Sugg v. Hendrix, 5 Cir., 142 F.2d 740, the Court upheld the Mississippi statute providing that any nonresident not qualified under the constitution and laws of Mississippi as to doing business therein shall, by doing such business, be deemed to have appointed the Secretary of State as his attorney upon whom process may be served in any action accruing from the doing of such business.

■ South Carolina has by its legislation expressed interest in the conduct of directors of corporations created by it, and the proper performance of their duties; and it seems to me that it has the power to regulate the actions of directors of corporations created by it.

The South Carolina statute gives ample protection to the nonresident director by providing that the corporation shall report to the Secretary of State the name and residence of the nonresident director and that the Secretary of State shall mail a copy of the process to him. Under the South Carolina Statutes it is not necessary that process be delivered personally to a defendant even if he resides in that State. It may be left at his residence with a person of discretion or with a person employed at his place of business.

The defendant challenges the statute because it does not provide for the sending of the notice by registered mail. The sending of notice by ordinary mail has always been recognized in this State as sufficient. Section 10–454, Code of Laws of South Carolina 1952.

In the case of Rosenthal v. Walker, 111 U.S. 185, 4 S.Ct. 382, 386, 28 L.Ed. 395, the Supreme Court said: "The rule is well settled that if a letter properly directed is proved to have been either put into the post-office or delivered to the postman, it is presumed, from the known course of business in the post-office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed."

The defendant contends that the copy of the summons and complaint should have been sent to him by registered mail because the Act approved May 19, 1947, provides that such copy shall be sent by registered mail. However, this suit was commenced in 1952, after the enactment of the 1952 Code, and that Code which the Legislature declared to be the "only general statutory law of the State on the 8th day of January, 1952" made no provision for the sending of the process by registered mail.

In any event, the defendant is in no position to complain, because he actually received the copy of the summons and moved to set aside the service thereof. Nor is he in a position to attack the statute because it made no provision for the sending of the process by registered mail, inasmuch as he has not been injured because of the failure of such provision.

In the case of Premier-Pabst Sales Co. v. Grosscup, 298 U.S. 226, 56 S.Ct. 754, 755, 80 L.Ed. 1155, the Supreme Court said: "We have no occasion to consider the constitutional question, because it appears that the plaintiff is without standing to present it. One who would strike down a state statute as obnoxious to the Federal Constitution must show that the alleged unconstitutional feature injures him."

The Supreme Court has held that "every possible presumption is to be indulged in favor of the validity of a statute," Mugler v. State of Kansas, 123 U.S. 623, 661, 8 S.Ct. 273, 297, 31 L.Ed. 205, and that "the case is to be considered in the light of the principle that the State is primarily the judge of regulations required in the interest of public safety and welfare, and its police statutes may only be declared unconstitutional where they are arbitrary or unreasonable attempts to exercise the authority vested in it in the public interest." Graves v. State of Minnesota, 272 U.S. 425, 428, 47 S.Ct. 122, 123, 71 L.Ed. 331.

For the foregoing reasons, it is my opinion that the motion of the defendant A. Rochlin to quash the service of process upon him and to dismiss the action, should be denied, and

It is so ordered.